UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIOS KOUREPIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SONY EUROPE LTD, et al., <br><br> Defendants. | Case No. 16-cv-04438-MEJ <br><br> **ORDER RE: MOTION TO REMAND; MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs Dimitrios Kourepis and George Damigos (together, "Plaintiffs") filed an employment discrimination complaint in San Francisco Superior Court on June 21, 2016. Corrected Not. of Removal, Dkt. No. 6 ("Not. of Removal"); Compl., Dkt. No. 6-3. The Complaint names as defendants Sony Corporation ("Sony Corp."), Sony Corporation of America ("SCA"), and Sony Europe Ltd. ("Sony Europe") (collectively, "Defendants"). *Id*. On August 5, 2016, SCA removed the action to this Court. Original Not. of Removal; Dkt. No. 1. Sony Europe specially appeared for the purpose of joining in the removal and arguing it is not subject to personal jurisdiction in California. *Id*. ¶ 8. Plaintiffs have not yet served Sony Corp.

Pending before the Court are two motions: (1) Plaintiffs' Motion to Remand the action to San Francisco Superior Court (Remand Mot., Dkt. No. 29); and (2) Sony Europe's Motion to Dismiss for lack of personal jurisdiction (Dismiss Mot., Dkt. No. 14). The Court heard oral arguments on the Motion to Remand on December 1, 2016. Having considered the parties' written and oral arguments and the relevant legal authority, the Court **GRANTS** Plaintiffs' Motion to Remand. In so doing, the Court does not reach Sony Europe's Motion to Dismiss.

# BACKGROUND[1]

Plaintiffs worked for Defendants for more than 20 years. Compl. ¶¶ 14, 20, 37. Plaintiffs are both Greek males and were in their mid-fifties when the events described in the Complaint took place. *Id*. They received excellence performance reviews throughout their careers at Sony. *Id*. ¶¶ 23, 38.

Around 2009, Sony Corp. began integrating the marketing and web operations of Sony entities throughout the world. Decl. of D. Kourepis ("Kourepis Decl.") ¶ 9, Dkt. No. 29-4. Sony Corp. launched the Global Sales and Marketing Group ("GSMG"), one of whose main objectives was integrating various Sony regional websites into one site that customers could easily access. *Id*.

When Kourepis began working with GSMG in 2010, he collaborated with both Sony Corp. and Sony Europe personnel. Compl. ¶ 10. In 2011, a Sony Corp. manager offered Kourepis a leadership role on the web initiative and asked Kourepis whether he would be interested in opening a new Global Web Office ("GWO") in San Francisco, California. Kourepis Decl. ¶ 11. Kourepis met with officials from Sony Corp., Sony Europe, and SCA to discuss his role in San Francisco. *Id*. ¶ 13. On August 1, 2012, Kourepis counter-signed an International Assignment Compensation and Condition Summary Letter ("Kourepis Summary Letter") describing the terms and conditions of his 3-year assignment to SCA and the GWO. *See* Decl. of H. Evans iso Mot. to Dismiss ("Evans Decl.") ¶ 30, Dkt. No. 14-4; *id*., Ex. 3 (Kourepis Summ. Ltr.). The Summary Letter was written on SCA letter head; it "confirm[ed] our mutual agreement on the terms and conditions of your international assignment from Sony Europe Limited, United Kingdom (hereinafter referred to as the Home Company) to [SCA], United States of America (hereinafter referred to as the Host Company)." Kourepis Summ. Ltr. at 2. In September 2012, Kourepis transferred from Sony Europe to the GWO to work as Senior Vice President of Global Web

---

[1] SCA and Sony Europe object to portions of the declarations filed by Plaintiffs in connection with the Motion to Remand. *See* Opp'n at 24-25, Dkt. No. 35. In this Order, the Court only relies upon the allegations of the Complaint, evidence submitted by SCA and Sony Europe, and evidence submitted by Plaintiffs to which SCA and Sony Europe have not objected. The evidentiary objections accordingly are moot.

Marketing, User Experience, and Content Creation. Compl. ¶ 21.

In March 2013, while Damigos was working for Sony Europe, SCA offered him a position at the GWO. Decl. of G. Damigos ("Damigos Decl.") ¶ 10, Dkt. No. 29-2. Damigos spoke with officials from both Sony Europe and SCA to discuss his role in San Francisco. Compl. ¶ 33. On April 2, 2013, Damigos counter-signed an International Assignment Compensation and Condition Summary Letter describing the terms of his 3-year assignment to SCA and the GWO. *See* Evans Decl. ¶ 37 & Ex. 6 (Damigos Summ. Ltr.). The Summary Letter was written on SCA letter head; it "confirm[ed] our mutual agreement . . . of your international assignment from Sony Europe Ltd., Belgium (hereinafter referred to as the Home Company) to Sony Corporation of America, United States of America (hereinafter referred to as the Host Company)." Damigos Summ. Ltr. at 2. In April 2013, Damigos transferred from Sony Europe to the GWO to work as Director of Global Web Traffic Generation. *See* Compl. ¶ 39.

While he worked at the GWO, Kourepis continued to manage Sony Europe's marketing team. Kourepis Decl. ¶¶ 26-29 & Ex. B. He managed approximately 50 employees located in Europe and he continued to report to Sony Europe's Head of Marketing. *Id*. ¶ 27. Damigos reported to Kourepis. *See* Damigos Decl. ¶ 19; Kourepis Decl. ¶ 22. Per the terms of their International Assignment Letters, Sony Europe paid 20 percent of Plaintiffs' base salaries, continued to contribute to their pension funds, and awarded them stock options during the term of their assignment to SCA. *See* Damigos Summ. Ltr. at 4, 7; Kourepis Summ. Ltr. at 4, 7; *see also* Kourepis Decl. ¶¶ 18-19; Damigos Decl. ¶ 17.

In March 2014, a new Senior Manager in Tokyo, Akira Matsubara, began to oversee the GWO. Compl. ¶ 24. In July 2014, Sony[2] announced it would close the GWO. *Id*. ¶ 25; *see also* Kourepis Decl. ¶ 30 (Sony Corp. decided to close GWO). In August 2014, Sony Corp. notified Kourepis that he would become a part of the "Tokyo team" to help transition GWO's functions to

---

[2] Plaintiffs allege each Defendant at all times acted as the agent, servant, employee, and/or representative of the other and is jointly and severally liable to Plaintiffs. *Id*. ¶ 8. In the allegations of the Complaint, Plaintiffs frequently do not distinguish between the three defendants, referring to them instead as "Defendants" or "Sony." The Court will be precise in its description of the allegations whenever possible but otherwise will adopt Plaintiffs' nomenclature.

3

1   Tokyo. Kourepis Decl. ¶ 34. Kourepis received an identification card to provide him access to
2   Sony Corp. headquarters in Tokyo, and was provided with access to the Tokyo office intranet;
3   Kourepis also received widely-distributed personnel emails from Sony Corp.'s Human Resources
4   department. *Id*.

5       In October 2014, Sony announced it would close the GWO by the end of March 2015.
6   Compl. ¶ 28. Kourepis began searching for positions for which he was qualified within Sony
7   affiliates. *Id*. ¶ 32. The Sony affiliates did not offer Kourepis any of the positions for which he
8   applied. *See id*. In March 2015, SCA and Sony Europe sent Kourepis an "Expatriate Leaving
9   Condition Letter" informing him the last day of his assignment at SCA would be June 30, 2015.
10  *See* Evans Decl., Ex. 4 (Kourepis Repatriation Ltr.). Kourepis requested Sony consider him for
11  another comparable role within Sony. Compl. ¶ 34. Sony did not repost Kourepis. *Id*. In or
12  around July 2015, Kourepis "opposed and protested Sony's discriminatory conduct" because
13  "Sony [had] offered many of the younger employees in the San Francisco office . . . comparable
14  employment and promotions within Sony offices in Europe and Tokyo." *Id*. Kourepis relocated
15  his family to Poland. Kourepis Decl. ¶ 46. Sony Europe changed Kourepis' termination date
16  retroactively to July 31, 2015, but Sony did not pay Kourepis for the month of July. *Id*.

17      In October 2014, Damigos received a "Retention Letter" informing of the upcoming
18  closure of the GWO, and that his San Francisco assignment would end in March 2015. Compl. ¶
19  43. In March 2015, SCA and Sony Europe sent Damigos an "Expatriate Leaving Condition
20  Letter" informing him the last day of his assignment at SCA would be June 30, 2015. *See* Evans
21  Decl., Ex. 7 (Damigos Repatriation Ltr.). Damigos met with a Tokyo-based manager to request a
22  transfer to Sony Corp.'s Japan offices. Compl. ¶ 45. The manager denied his transfer request
23  without explanation. *Id*. ¶ 46. Damigos then "applied for 11 open positions for which he was
24  qualified within various Sony [] subsidiaries including PlayStation, Sony Music, and Sony USA."
25  *Id*. ¶ 47. In April 2015, "Defendants' European Human Resources Division" informed Damigos
26  "there was no position available for him in Europe." *Id*. ¶ 52. But on June 29, 2015, Damigos
27  received a letter confirming his employment with Sony Europe, and providing his new salary and
28  bonus information. *Id*. ¶ 53. Within a few weeks, he moved to Brussels, Belgium. *Id*. ¶¶ 54, 55.

4

1    During the two times he reported to Sony Europe's office, he was instructed to sign in as a visitor
2    and was told his services were not needed. *Id.* On July 31, 2015, Damigos reported to the office
3    and requested a meeting with the General Manager of Human Resources/Regional Head of Human
4    Resources for Sony Europe. *Id.* ¶ 56. The general manager did not meet with Damigos, but
5    instead told him by telephone that his employment was terminated, effective immediately. *Id.*
6    Sony Europe terminated Damigos on July 31, 2015. *Id.*

7    Sony Corp. Vice President and Chief Executive Officer Kenichiro Yoshida announced in
8    August 2014 that "Sony is ag[e]ing . . . the age composition at Sony is distorted, and there is a
9    lack of employees aged 35 or younger . . . . We must be conscientious of the need to hire young
10   people, and strive to create opportunities for them." Compl. ¶ 18. Several months later, Mr.
11   Yoshida warned that "[u]nless the age structure . . . issue is rectified, there won't be enough
12   people ready to take over the reins of Sony down the road" and called for Sony to "provide[]
13   opportunities for young people to take on challenges." *Id.* ¶ 19. Including Plaintiffs, there were
14   nine senior managers in the GWO. *Id.* ¶ 58. When Sony closed the GWO, it retained all of the
15   senior managers who had worked there—except Plaintiffs; the senior managers whom Sony
16   retained were 45 years old or younger. *Id.*

17   Plaintiffs assert Defendants violated the California Fair Employment and Housing Act
18   ("FEHA"), Cal. Gov't Code §§ 12940 et seq., by discriminating against them on the basis of their
19   age, national origin, race, and/or ancestry, failing to take reasonable steps to prevent or correct
20   discrimination, and retaliating against them for opposing unlawful employment practices. *See*
21   Compl. They also assert a claim for wrongful termination in violation of public policy. *Id.*
22   Plaintiffs allege Sony Corp. "hired Plaintiffs, employed them, and paid their salaries, and thus was
23   Plaintiffs' employer within the meaning of [FEHA.]" Compl. ¶ 4; *id.* ¶ 5 ("Plaintiffs worked for,
24   and were paid by [SCA] when they were employed in the United States[;] Defendant [SCA] was
25   Plaintiffs' employer within the meaning of [FEHA]."); *id.* ¶ 6 ("[O]n information and belief,
26   Defendant Sony Europe was Plaintiffs' employer within the meaning of [FEHA].").

## LEGAL STANDARD

28   Subject matter jurisdiction is fundamental and cannot be waived. *Billingsley v. C.I.R.*, 868

F.2d 1081, 1085 (9th Cir. 1989).  Federal courts can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate, i.e., those involving diversity of citizenship or a federal question, or those to which the United States is a party.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1415 (9th Cir. 1992) (federal courts have no power to consider claims for which they lack subject-matter jurisdiction).

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  However, the removal statutes are construed restrictively so as to limit removal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("Where doubt regarding the right to removal exists, a case should be remanded to state court.").  The burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  The district court must remand the case if it appears before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c); *Abada v. Charles Schwab & Co.*, 300 F.3d 1112, 1118 n.2 (9th Cir. 2002).

Subject matter jurisdiction is determined from the face of the complaint.  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal question must be presented on face of plaintiff's properly pleaded complaint); *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1189-90 (9th Cir. 1970) (existence of diversity jurisdiction must be sufficient on the face of the complaint).

## DISCUSSION

**A.     Basis for Removal**

SCA and Sony Europe (together, the "Removing Defendants") removed the action pursuant to 28 U.S.C. §§ 1332 and 1441.  *See* Not. of Removal.  The Removing Defendants contend the Court should disregard the citizenship of Sony Europe and Sony Corp. because these

defendants are fraudulently joined. Opp'n at 5-23, Dkt. No. 35.[3] The Removing Defendants argue they are fraudulently joined because Plaintiff has not stated, and cannot state, any claim against them for two reasons: (1) all conduct Plaintiffs complain of occurred outside of California, and FEHA cannot apply extra-territorially, and (2) Sony Europe is not subject to personal jurisdiction in California. If the Court were to follow the Removing Defendants' argument and disregard the citizenship of Sony Europe and Sony Corp., complete diversity would exist between the parties, and this Court would have subject matter jurisdiction over the action.

## B.    Fraudulent Joinder

A defendant may remove a civil action that alleges claims against parties who defeat diversity jurisdiction if those parties are fraudulently joined. "Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Awasthi v. InfoSys Techs. Ltd.*, 2010 WL 2077161, at *6 (N.D. Cal. May 21, 2010) ("A party is only deemed to have been 'joined fraudulently' if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." (internal quotation marks and citation omitted)); *Nijem v. U.S. Bancorp.*, 2011 WL 5104474, at *2 (N.D. Cal. Oct. 26, 2011) ("The defendant need not show that the joinder of the non-diverse party was for the purpose of preventing removal. The defendant need only demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." (citing *McCabe*, 811 F.2d at 1339)).

In the Ninth Circuit, district courts may examine supplemental declarations and materials

---

[3] There is no dispute regarding the citizenship of the parties, or that the amount in controversy exceeds the $75,000 jurisdictional minimum. The only issue before the Court is whether Sony Europe and Sony Corp. are sham defendants for purposes of removal jurisdiction. The Removing Defendants also asserted an additional ground for removal in their Notice of Removal, which they do not raise in their Opposition to the Motion to Remand. *See* Not. of Removal at 14 ("The United-States Japan Friendship, Commerce and Navigation Treaty bars any claims by Plaintiffs with respect to the operations of Sony Corporation in Japan").

submitted by the parties in evaluating whether joinder is fraudulent.  *See Dunn v. Infosys Ltd.*, 2012 WL 4761901, at *3 (N.D. Cal. Oct. 5, 2012) (collecting cases demonstrating courts may consider evidence submitted by defendants seeking removal on basis of fraudulent joinder, and by plaintiffs seeking to remand on basis joinder is not fraudulent).  The court must resolve all disputed questions of fact and all ambiguities in the law in favor of the plaintiff.  *Soo v. United Parcel Service*, 73 F. Supp. 2d 1126, 1128 (N.D. Cal. 1999).

The defendant who asserts the existence of fraudulent joinder "carr[ies] a heavy burden of persuasion."  *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001) (citing *Nishimoto v. Federman–Bachrach & Assoc.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990)); *see also Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (defendant must prove fraudulent joinder "by clear and convincing evidence").  If, after reviewing the facts and the applicable law, "there is a non-fanciful possibility that plaintiff can state a claim under [state] law" against the non-diverse defendant, then remand is required.  *Umamoto v. Insphere Ins. Sols., Inc.*, 2013 WL 2084475, at *3-4 (N.D. Cal. May 14, 2013) (quoting *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002)).

**C.    Analysis**

As is relevant here, FEHA prohibits "an employer" from "refus[ing] to hire or employ the person or . . . discharg[ing] the person from employment . . . or . . . discriminat[ing] against the person in compensation or in terms, conditions, or privileges of employment" based on the person's age or national origin.  Cal. Gov't Code § 12940(a).

Resolving all disputed issues of fact in Plaintiffs' favor (*Soo*, 73 F. Supp. 2d at 1128), the Court finds Plaintiffs have demonstrated there is a "non-fanciful possibility" that Defendants were their employers for purposes of FEHA.  FEHA defines an "employer" as "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly . . . ."  Cal. Gov't Code § 12926(d) (2015).  Under California law, to "employ" means, among other things, exercising control over wages, hours, or working conditions.  *See Castaneda v. Ensign Grp., Inc.*, 229 Cal. App. 4th 1015, 1019 (2014) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2004)).  Multiple entities may be employers if they control different aspects of the

employment; "[t]his occurs, for example, when one entity (such as a temporary employment agency) hires and pays a worker, and another entity supervises the work." *Id.* at 1018-19. Plaintiffs allege in the Complaint that all three Defendants were their "employers," either directly or indirectly under several agency theories.

In addition, Plaintiffs rely on evidence submitted by Defendants and statements in their own Declarations. Specifically, Defendants' Summary Letters establish that Sony Europe continued to pay 20% of Plaintiffs' salaries, pensions, and stock options throughout their assignment at the GWO. Sony Europe signed Plaintiffs' Summary Letters informing them of the terms of their assignments to the GWO; Sony Europe and SCA signed their Repatriation Letters informing them of the end of their assignments to the GWO. While at GWO, Kourepis represents he continued to work with Sony Europe's marketing team, managed 50 Sony employees located in Europe, and reported to a Sony Europe Manager and a general manager who worked for Sony Corp. in Tokyo. Plaintiffs represent that Sony Corp. executives oversaw the GWO operations; for instance, Senior Manager Matsubara took over the management of the GWO in 2014 and oversaw the wind-down of that office. Matsubara told Kourepis he would become part of the Sony Corp. team during the wind-down, and Kourepis subsequently received a Sony Corp. identification card, as well as access to the Sony Corp. intranet. Matsubara also repeatedly met with Plaintiffs in San Francisco. He gave Damigos performance feedback and conducted Kourepis' performance reviews. Based on the allegations of the Complaint and the evidence in the record, there is a "non-fanciful possibility" that all three Defendants would be deemed "employers" because they exercised control over Plaintiffs' pay (Sony Europe and SCA), and/or supervised them (all three Defendants) in connection with their assignment to the GWO.

Resolving all disputed issues of fact in Plaintiffs' favor, the Court finds Plaintiffs also have demonstrated that there is a "non-fanciful possibility" that Defendants were involved in taking decisions and actions that could constitute discrimination under FEHA, either directly or as joint employers. Senior Manager Matsubara started excluding Kourepis from meetings regarding the restructuring of GWO, inviting one of Kourepis' younger employees to attend the meetings instead. The seven younger senior managers who had worked at the GWO were reassigned to

positions in Europe or Japan in the weeks leading up to the closure of the GWO. Damigos and Kourepis were the only senior managers at the GWO who were not reassigned to another position with a Sony affiliate; this despite the fact that Plaintiffs applied for dozens of positions for which they were qualified with dozens of Sony affiliates worldwide—including positions with Sony Europe and Sony Corp. Sony Europe offered Damigos a position in Brussels, but refused to let him work when he reported for duty; he was formally terminated on July 31, 2015. Kourepis never received a reassignment after he left the GWO in June 2015. Sony Corp. executives publicly expressed concern about the fact the company was "ag[e]ing" and encouraged Sony to hire and train younger employees. Based on the allegations in the Complaint and the evidence in the record, there is a "non-fanciful possibility" that Plaintiffs can state a claim by showing that Defendants coordinated the decision to treat Plaintiffs differently than the younger senior executives at the GWO based on Plaintiffs' age.

The Removing Defendants nonetheless contend Plaintiffs cannot state a claim against Sony Corp. and Sony Europe because all the discriminatory facts alleged in the Complaint occurred outside of California, and California's anti-discrimination laws do not apply to wrongs committed outside the territorial jurisdiction of California. *See* Opp'n at 5-15. But to the extent extraterritoriality is an affirmative defense[4], the Court must ignore it for purposes of the fraudulent joinder analysis. *See Dunn*, 2012 WL 4761901, at *2 (courts evaluating fraudulent joinder do "not ordinarily look to whether defendants can propound valid affirmative defenses on the merits[.]" (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998)); *see also Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (courts can look at statute of limitations affirmative defense to evaluate fraudulent joinder, as that defense is "rather unique [because it] does not truly to the merits of the plaintiff's claim in any sense"; other affirmative defenses that "require[] an inquiry into the merits of the plaintiff's claims against all defendants and an analysis of federal law" are not properly considered on a motion to remand)).

During the hearing, Defendants argued that extraterritoriality was not an affirmative

---

[4] SCA listed extraterritoriality as an affirmative defense in its answer. *See* Answer, Sixth Aff. Def., Dkt. No. 6-5.

10

defense, and that Plaintiffs must show the discriminatory conduct occurred in California to plead a FEHA claim.  They cited *Rulenz v. Ford Motor Co*., 2013 WL 2181241 (S.D. Cal. May 20, 2013) for the proposition that to plead a proper FEHA claim, a plaintiff must "also sufficiently allege the actions occurred in the state of California."  *Id*. at *3 ("California courts have found that FEHA does not apply to nonresidents employed outside the state when the tortious conduct did not occur in California").  But *Rulenz* and the cases it cites are distinguishable from the case at bar, as those opinions concerned plaintiffs who did not even allege they resided or had been employed in California.  *See id*. (plaintiff resided in Nevada and worked in Nevada; only reference to California was one interview for which she was not selected, and that allegation was "ancillary" to her claim); *see also Dodd-Owens v. Kyphon, Inc*., 2007 WL 420191, at *2-3 (N.D. Cal. Feb. 5, 2007) (plaintiff not a resident of California, job functions were performed at high seas, harassment of which she complained took place while ships were at sea except for one incident in Washington; plaintiff only had occasional brief stop overs in California; court granted plaintiff leave to amend to "attempt to allege clearly and specifically the tortious conduct occurring in California); *Campbell v. Arco Marine*, 42 Cal. App. 4th 1850, 1859-60 (1996) (FEHA "should not be construed to apply to non-residents employed outside the state when the tortious conduct did not occur in California").  In this instance, both Plaintiffs allege (and provide evidence in their declarations) that Defendants treated younger employees in their conditions of employment more favorably than Plaintiffs while Plaintiffs were employed in California at the GWO; that Defendants coordinated their efforts to retain younger employees by reassigning them to other locations during the wind-down of the GWO while declining to reassign Plaintiffs despite their qualifications and performance record; and that Defendants actually terminated Plaintiffs while they were employed in California but waited to formally do so until they were back in Europe.  Thus, Plaintiffs were residents of California and were employed in California at the time these allegedly discriminatory events took place.  Unlike the plaintiffs in *Rulenz*, *Dodd-Owens*, and *Campbell*, Plaintiffs have alleged a factual nexus between Defendants' California-based activities and the conduct at issue in the Complaint.  Based on these allegations, the Court again finds there is a "non-fanciful possibility" Plaintiffs can state a claim that Defendants discriminated against

Plaintiffs in California.

### 3. Personal Jurisdiction Over Sony Europe

The Removing Defendants further argue that Sony Europe is fraudulently joined because it is not subject to personal jurisdiction in California, and therefore Plaintiffs cannot state a claim against that entity. *See* Opp'n at 16-23.

When federal subject matter jurisdiction is based on diversity of citizenship between the parties, "complete diversity must exist between the opposing parties." *Palma v. Prudential Ins. Co.*, 791 F. Supp. 2d 790, 794 (N.D. Cal. 2011) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)); *see also Brazina v. Paul Revere Life Ins. Co.*, 271 F. Supp. 2d 1163, 1172 (N.D. Cal. 2003) ("[C]omplete diversity requires that no defendant share citizenship with any plaintiff"). Complete diversity is defeated by joinder of a non-diverse defendant even if that non-diverse defendant has not been served. *Soo*, 73 F. Supp. 2d at 1128.

Plaintiffs do not contradict the Removing Defendants' representations that Plaintiffs are Greek nationals who currently reside in Europe. *See* Not. of Removal ¶ 10; *see also* Kourepis Decl. ¶¶ 2-3 (Greek national origin, currently living in Poland); Damigos Decl. ¶¶ 2-3 (Greek national origin, currently living in Belgium). Sony Europe is a United Kingdom corporation with its headquarters and principal place of business in England. Declaration of H. Evans Decl. iso Not. of Removal ¶ 9, Dkt. No. 3. Sony Corp. is a Japanese citizen (Not. of Removal ¶ 10) licensed to do business in California (Compl. ¶ 4). SCA is a citizen of New York, registered to do business in California. *Id.* ¶ 12.

The Court need not determine whether Sony Europe is subject to the Court's personal jurisdiction because there appears to be no dispute that Sony Corp. is subject to personal jurisdiction in California. Sony Corp. is a foreign citizen, as are Plaintiffs. Alone, the existence of Sony Corp. as a defendant accordingly is sufficient to defeat complete diversity and require remand. *See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) ("Although the federal courts have jurisdiction over an action between 'citizens of a State and citizens or subjects of a foreign state,' 28 U.S.C. § 1332(a)(2), diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants. . . . Nike's presence as a [U.S. citizen]

plaintiff does not salvage jurisdiction because diversity must be complete."); *Faysound Ltd. v. United Coconut Chem., Inc.*, 878 F.2d 290, 294 (9th Cir. 1989) (presence of citizen defendant does not save jurisdiction as to alien defendant in action brought by alien plaintiff); *Paskal v. Indalex, Inc.*, 2008 WL 62279, at *1 (N.D. Cal. Jan. 4, 2008) ("Diversity jurisdiction may exist in certain cases involving foreign parties. . . . However, there is no jurisdiction in cases involving an alien plaintiff suing an alien defendant, even if there are citizen defendants present.").

4. <u>Summary</u>

Based on the allegations of the Complaint and the evidence before the Court, Defendants have not met their "heavy burden" of establishing by clear and convincing evidence that Plaintiffs cannot state a FEHA claim against each of the three Defendants. Accordingly, the Court cannot find that Sony Corp. and Sony Europe are fraudulently joined on that basis. In addition, even if the Court could not exercise personal jurisdiction over Sony Europe, the existence of Sony Corp. as a Defendant would destroy complete diversity.

## CONCLUSION

As subject matter jurisdiction appears to be lacking, the Court **REMANDS** the action to San Francisco County Superior Court. The Court does not reach the merits of Sony Europe's Motion to Dismiss for Lack of Personal Jurisdiction. Sony Europe may raise the same arguments to the Superior Court.

**IT IS SO ORDERED.**

Dated: December 7, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

13